UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| SENECA LOVETT ENGEL,<br><br>Plaintiff,<br><br>vs.<br><br>DEREK ENGEL, MILLER POLICE DEPARTMENT, CITY OF MILLER, SOUTH DAKOTA, JIM HENSON, MILLER POLICE DEPARTMENT, OFFICIALLY AND INDIVIDUALLY; SHANNON SPECK, MILLER POLICE DEPARTMENT, OFFICIALLY AND INDIVIDUALLY; AND VARIOUS JOHN AND JANE DOES, MILLER POLICE DEPARTMENT, OFFICIALLY AND INDIVIDUALLY;<br><br>Defendants. | 3:21-CV-03020-RAL<br><br><br>OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS |

The Defendants in this case have filed motions to dismiss. Although Plaintiff appears to have legitimate state-law claims against at least one defendant, the absence of a viable claim within federal court jurisdiction requires dismissal of the case.

I.   **Factual Background**[1]

This case arises from an incident that occurred in Hand County, South Dakota, in the fall of 2019. Doc. 1 at ¶¶ 3, 12. Plaintiff Seneca Lovett Engel ("Seneca"), an African American

---

[1] In ruling on these motions to dismiss, this Court takes the well-pleaded allegations of the complaint as true. This Court is not making any findings of fact through this Opinion and Order.

1

female, alleges that Derek Engel ("Derek"), her then husband[2] and one of the Defendants named in the complaint, believed Seneca was involved in an extra-marital affair. Doc. 1 at ¶ 12. Seneca alleges that Derek took her phone while she was grocery shopping in Miller, South Dakota, on October 29, 2019. Doc. 1 at ¶ 13. Later that day, Seneca and Derek met at the Miller airport and began arguing about the phone and alleged infidelity. Doc. 1 at ¶ 14. Seneca claims that Derek grabbed her by the neck and slammed her against the side of a pickup truck ripping her coat, cutting her finger, and causing pain in her back and neck. Doc. 1 at ¶ 14.

After the altercation and with Derek still possessing her phone, Seneca traveled to the Miller Police Department to report the incident. Doc. 1 at ¶ 15. Derek, while following Seneca to the police department, called Defendant Jim Henson ("Henson"), an officer for Defendant Miller Police Department, to report that Derek and Seneca would be arriving at the police department to discuss a domestic incident. Doc. 1 at ¶ 15.

When they arrived at the police department, Henson spoke with both Derek and Seneca about the incident. According to Seneca, Derek admitted to taking her phone and grabbing and shoving her at the airport. Doc. 1 at ¶¶ 16-17. She said the couple's four-year-old son witnessed the altercation and verified to police her claims. Doc. 1 at ¶¶ 14, 20. She also told Henson that she had been the victim of physical abuse repeatedly throughout the relationship and requested law enforcement take action to return her phone and to pursue a domestic assault criminal complaint. Doc. 1 at ¶¶ 18-19. Henson consulted with Defendant Shannon Speck, Chief of the Miller Police Department. Doc. 1 at ¶ 21. According to Seneca, the Miller Police Department ultimately failed to take any action. Doc. 1 at ¶ 22.

---

[2] Seneca and Derek had been married for approximately three years when the incident took place. Doc. 1 at ¶ 13. They have a son. Doc. 1 at ¶ 14.

2

According to Seneca, Derek accessed personal material including social media accounts and email on her phone after he was allowed to leave the police station with possession of it. Doc. 1 at ¶ 23. Seneca claims that Derek used this access to impersonate her while contacting third parties on Snapchat, Facebook and Instagram. Doc. 1 at ¶ 26. Derek also accessed other personal content on the phone such as photos of her that were sexual in nature and personal information about her private life, sending such material to Seneca's family, friends and others in the Miller community. Doc. 1 at ¶ 27. According to Seneca, Derek told friends, family, co-workers, and church and community members that Seneca was a drug addict and prostitute with mental health issues. Doc. 1 at ¶ 30. Seneca thereafter felt that this allegation forced her to resign from her positions at a church and as a board member at a daycare. Doc. 1 at ¶ 31. She claims the allegations compromised her EEOC complaint against a former employer resulting in a less favorable settlement. Doc. 1 at ¶ 33. She also claims Derek harassed her by sending her photos of dead animals, setting off her car alarm, and being verbally abusive when exchanging custody of their son. Doc. 1 at ¶35. Seneca felt forced to seek home employment due to fear for her safety. Doc. 1 at ¶ 35.

Seneca obtained a temporary restraining order against Derek on October 30, 2019, and began staying in a nearby town. Doc. 1 at ¶¶ 24-25. Seneca reported Derek's behavior to Henson and Speck. Doc. 1 at ¶ 28. Despite these reports, the Miller Police Department failed to properly act upon and investigate the matter. Doc. 1 at ¶ 29. Seneca received another temporary restraining order against Derek on January 21, 2020. Doc. 1 at ¶ 36.

Seneca filed this action against Engel, the Miller Police Department, City of Miller, Henson, Speck and the various John and Jane Does of the Miller Police Department officially and

in their individual capacities (collectively "Defendants"). Doc. 1. Seneca asserts multiple causes of action including assault and battery (against Derek), defamation (against Derek), invasion of privacy (against all Defendants), intentional infliction of emotional distress (against all Defendants), negligent infliction of emotional distress, (against Miller Police Department, City of Miller, Henson, Speck and various John and Jane Does of Miller Police Department (collectively "the Miller Defendants")), negligent hiring, training, supervision and retention (against the Miller Defendants), conspiracy under 42 U.S.C. § 1985 (against all Defendants), and conspiracy under 42 U.S.C § 1983 (against all Defendants). Doc. 1 at ¶¶ 38-100. The Miller Defendants answered, Docs. 9, 15, and Derek and the Miller Defendants filed separate motions to dismiss and supporting briefs. Docs. 16, 17, 24, 25. Seneca opposed the motions to dismiss.[3] Docs. 18, 26, to which Defendants replied. Docs. 21, 30. After reviewing the files and records, this Court grants Defendants' motions to dismiss for failure to state a claim under Rule 12(b)(6) for the reasons set forth below.

## II. Standard of Review

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Courts must accept the plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor, but need not accept the plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to

---

[3] Seneca also filed a Motion for Judicial Notice, Doc. 20, seeking to have the Court take judicial notice of the petition, affidavit, temporary protective order, and transcript of hearing. Doc. 19. This Court accepts as true all well-pleaded allegations, including that Seneca sought and received such a protective order.

"state a claim to relief that is plausible on its face[,]" meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Therefore, the "factual allegations must be sufficient to raise a right to relief above the speculative level." Cook v. George's, Inc., 952 F.3d 935, 938 (8th Cir. 2020) (cleaned up and citation omitted). Courts are to construe complaints liberally. Id.

### III.   Discussion

#### A.   42 U.S.C § 1983

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C § 1983. Seneca claims that the Defendants acted with reckless indifference to her constitutional rights. Doc. 1 at ¶¶ 92-100. "Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed." Faulk v. City of St. Louis, 30 F.4th 739, 744 (8th Cir. 2022) (citation omitted). Therefore, this Court will address each Defendant in turn, grouping them together when appropriate.

##### 1.   Derek

Derek asserts that as a private individual, he cannot be held liable under § 1983. Docs. 17, 21. Seneca responds that Derek acted under the color of state law because he acted with the help, and in conspiracy with, the Miller Defendants. Doc. 18. The parties agree that a § 1983 claim requires that the Defendants: 1) acted under the color of state law, and 2) deprived the plaintiff of a federal right secured by the Constitution or laws of the United States. See Docs. 17, 18 (citing

West v. Atkins, 487 U.S. 42, 48 (1988)). However, the parties disagree on what test this Court should apply to determine whether Derek acted under the color of state law. See Docs. 17, 18. Derek also contests whether he deprived Seneca of any constitutional rights. Doc. 17.

Derek cites to Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974), for the proposition that a private individual only acts under the color of state law if "there is a sufficiently close nexus between the State and the challenged action of the [actor] so that the action of the latter may be fairly treated as that of the State itself." See Doc. 17. However, Seneca cites to Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3rd Cir. 1995), to contend the Supreme Court has at times applied different tests and to argue that this Court should instead ask "whether the private party has acted with the help of or in concert with state officials." Doc. 18 (citing Mark, 51 F.3d at 1142). The Eighth Circuit has stated that a private actor "may be liable under § 1983 only if she is a willing participant in joint action with the State or its agents." Miller v. Compton, 122 F.3d 1094, 1098 (8th Cir. 1997) (cleaned up and citations omitted). This requires alleging at least a meeting of the minds to overcome a motion to dismiss. Id. Moreover, a person may fairly be said to be a state actor if they "acted together with or ... obtained significant aid from state officials in furtherance of the challenged action." Wickersham v. City of Columbia, 481 F.3d 591, 597 (8th Cir. 2007) (cleaned up and citation omitted). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Parker v. Boyer, 93 F.3d 445, 447–48 (8th Cir. 1996) (cleaned up and citation omitted).

Regardless of what test this Court uses to analyze the color-of-law element, Seneca's complaint falls short of stating sufficient facts to establish that Derek's actions were under color of state law. Seneca points to the facts that Derek was the first to contact the Miller Defendants

about the domestic altercation and to speak with them at the police station as proof that Derek acted in concert with the Miller Defendants to deprive Seneca of her phone, which in turn allowed Derek the opportunity to commit the alleged tortuous acts of defamation, assault and invasion of privacy. Doc. 18. She also states that the Miller Defendants' failure to respond to Derek's tortious conduct when they had probable cause to investigate him further demonstrates that Derek and the Miller Defendants acted together under the color of law. Doc. 18.

Seneca's factual claims, even taken as true, do not establish that Derek acted under the color of state law. The Eighth Circuit has said that "[t]o impose § 1983 liability on a private actor for merely answering a law enforcement official's questions regarding a case would have obvious and unfortunate consequences and has no support in precedent or common sense." Miller, 122 F.3d at 1098. As one court has noted, "the summoning of police officers or the provision of information to police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of Section 1983." Carrillos v. Inc. Vill. of Hempstead, 87 F. Supp. 3d 357, 371 (E.D.N.Y. 2015) (listing cases). Derek made the first report and spoke with the Miller Defendants about the domestic altercation, no doubt providing his own gloss on what occurred. But this does not transform him into an actor under color of state law simply because the Miller Defendants believed him or failed to act based on conflicting accounts of a domestic dispute. See Benavidez v. Gunnell, 722 F.2d 615, 618 (10th Cir. 1983) (furnishing information to police does not constitute joint action under color of state law for §§ 1983 and 1985). Indeed, as Derek argues, see Doc. 17 at 6, Seneca has not alleged that Derek took any action on behalf of the state or acted with their authority, and Seneca admits that the Miller Defendants' actions of deliberate indifference at most only "tacitly authorized" Derek's actions. See Doc. 18 at 5. Without factual enhancement,

7

Seneca's allegations about Derek being a state actor are "merely legal conclusions." Faulk, 30 F.4th at 747 (cleaned up and citation omitted). Seneca cannot establish that an agreement was made or that a meeting of the minds occurred between the Miller Defendants and Derek. The facts provided only prove that Derek first communicated with the Miller Defendants and persuaded them not to seize the phone or investigate or arrest him.

Nor does Seneca state a claim for a § 1983 conspiracy between Derek and the Miller Defendants. To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." Faulk, 30 F.4th at 747 (cleaned up and citation omitted). A viable conspiracy claim "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." Id. at 748. Seneca does not state what agreement the Miller Defendants made with Derek or help they provided that allowed Derek to commit the alleged offenses other than failing to retrieve her phone and failing to investigate and arrest Derek. Based on the facts provided, it appears that the Miller Defendants plausibly may have been negligent in failing to seize the phone and properly investigate Derek, but not working in concert or conspiring with Derek to deprive Seneca of any constitutional right. See Daniels v. Williams, 474 U.S. 327, 332 (1986) (lack of due care does not deprive a constitutional right under the Fourteenth Amendment); see also Lane v. Sarpy Cnty., 165 F.3d 623, 624 (8th Cir. 1999) (negligent conduct does not establish § 1983 complaint). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (cleaned up).

Even accepting Seneca's factual allegations as true, she has failed to establish that Derek acted under the color of state law and therefore has not met her burden under § 1983. Derek's motion to dismiss as to the § 1983 claim is granted under Rule 12(b)(6).

### 2. The Miller Defendants

The Miller Defendants assert that due to qualified immunity, they cannot be held liable under 42 U.S.C. § 1983 in this case. "Qualified immunity ensures that government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Faulk, 30 F.4th at 744 (cleaned up and citation omitted). At the Rule 12(b)(6) stage, a defendant must show they are "entitled to qualified immunity on the face of the complaint." Bradford v. Huckabee, 394 F.3d 1012, 1015 (8th Cir. 2005). To defeat qualified immunity, the plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."[4] Faulk, 30 F.4th at 744.

Seneca has named the Miller Defendants in both their individual and official capacities. "Official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." Mortensbak v. Butler, 102 F. Supp. 3d 1085, 1100–01 (D.S.D. 2015) (cleaned up and citation omitted). Thus, "a § 1983 suit against an officer in his official capacity is functionally equivalent to a suit against the employing governmental entity and must be dismissed as redundant to the claims asserted against the government entity." Powers v. City of Ferguson, 229 F. Supp. 3d 894, 899 (E.D. Mo. 2017) (citing Veatch v. Bartels Lutheran Home,

---

[4] Courts may alter the sequence of the analysis to determine if the test is met. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

9

627 F.3d 1254, 1257 (8th Cir. 2010)). Therefore, this Court dismisses the claims against the Miller Defendants in their official capacity and will address Seneca's claims regarding the municipality below. Likewise, Seneca's claims against the Miller Police Department are dismissed as they are properly analyzed as against the municipality. See Ketchum v. City of W. Memphis, Ark., 974 F.2d 81, 82 (8th Cir. 1992). In addition, defendants "cannot be held liable merely because they were employed by [a police department] on the night some members of that department may have violated plaintiffs' rights -- liability under § 1983 requires proof of a causal link between *each* defendant and the *specific wrongs* that defendant committed." Faulk, 30 F.4th at 745 (cleaned up and citation omitted). Therefore, Seneca's claims against the John and Jane Does of the Miller Police Department are dismissed as no specific allegations have been levied against them. This Court will discuss separately the remaining individual capacity claims against each of the Miller Defendants.

First, Seneca contends that Henson and Speck violated her statutory and constitutional rights by failing to arrest Derek, failing to secure her phone, and failing to properly investigate her repeated reports concerning Derek's alleged offenses following the issuance of a protective order. Doc. 26 at 3. Seneca argues that these actions violated her Fourth Amendment rights to privacy and to be free from seizure, Fifth Amendment right prohibiting the state from depriving her of "life, liberty, property, without due process of law," and Fourteenth Amendment right to equal protection of the law. Doc. 26 at 4.

Seneca's claims against Henson and Speck fail to state a claim because she has not plausibly alleged that the Miller Defendants agreed to a conspiracy with Derek to commit the alleged offenses eliminating her Fourth Amendment claim to privacy and Fifth Amendment claim to "life, liberty and property." After all, Derek was the one who invaded Seneca's privacy and

took other actions to the detriment of her "life, liberty and property." The mere failure to investigate and arrest Derek and retrieve her phone do not thereby support the inference that the Miller Defendants violated her Fourth or Fifth Amendment rights. See Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." (citation omitted)); see also Danielson v. Huether, 355 F. Supp. 3d 849, 860 n.2 (D.S.D. 2018) ("The law is clear that there is no independent constitutional right to the investigation of another.").

Seneca's Fourteenth Amendment claims, whether based in equal protection or due process, fail for much the same reason. Regarding the equal protection claims, "[a] police department's failure to protect victims of domestic violence can amount to an equal protection violation actionable under 42 U.S.C. § 1983." Villanueva v. City of Scottsbluff, 779 F.3d 507, 511 (8th Cir. 2015). The test the Eighth Circuit has adopted, albeit at the summary judgment stage, to allow a § 1983 equal protection claim against the police states:

> [A] plaintiff must proffer sufficient evidence that would allow a reasonable jury to infer that it is the policy or custom of the police to provide less protection to victims of domestic violence than to other victims of violence, that discrimination against women was a motivating factor, and that the plaintiff was injured by the policy or custom.

Ricketts v. City of Columbia, 36 F.3d 775, 779 (8th Cir. 1994). Here, Seneca has not alleged any facts that she faced discrimination based on gender or race and does not allege any facts that would allow this Court to infer it was a policy or custom of the Miller Defendants to provide less protection to women, women of color, or victims of domestic violence.

To support her due process claims, Seneca points to the Miller Defendants' failure to investigate her allegations against Derek as proof she was denied substantive due process. "The Supreme Court has noted that the right to access the courts finds support in many parts of the

11

Constitution, including the Due Process Clause." Scheeler v. City of St. Cloud, Minn., 402 F.3d 826, 831 (8th Cir. 2005). However, "as a general matter, [a] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Villanueva, 779 F.3d at 512 (cleaned up and citation omitted); see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989) ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors."); Danielson, 355 F. Supp. 3d at 860 n.2 (no constitutional right to the investigation of another).

The Eighth Circuit has recognized one exception: the "state-created-danger theory' under which the state owes a duty to protect individuals if it created the danger to which the individuals are subjected." Villanueva, 779 F.3d at 512 (cleaned up and citation omitted). To establish the "state-created-danger theory," the plaintiff must prove:

> (1) that she was a member of a limited, precisely definable group, (2) that the municipality's conduct put her at a significant risk of serious, immediate, and proximate harm, (3) that the risk was obvious or known to the municipality, (4) that the municipality acted recklessly in conscious disregard of the risk, and (5) that in total, the municipality's conduct shocks the conscience.

Id. (citation omitted). But the Eighth Circuit and other courts, in applying this test, have refused to find a state-created danger when an officer uses his or her discretion in evaluating domestic violence allegations and chooses not to investigate. See id. at 513; Brown v. Grabowski, 922 F.2d 1097, 1114 (3d Cir. 1990) (applying state-created-danger theory and finding no due process violation when police failed to investigate allegations that victim had been kidnapped for three days and other threats of domestic violence where victim was later killed by intimate partner); Hansell v. City of Atl. City, 152 F. Supp. 2d 589, 608 (D.N.J. 2001) (finding no due process violation when police officers took no affirmative act that placed plaintiff in danger in failing to

investigate domestic violence complaint); Sheets v. Mullins, 287 F.3d 581, 588 (6th Cir. 2002) (officer's failure to further investigate a domestic violence complaint alleging the plaintiff's boyfriend threatened to kill her and their child did not violate the plaintiff's due process rights, even though her boyfriend later killed their daughter).

Seneca claims the officers' "deliberate indifference" violated her constitutional right to access the courts. Doc. 26 at 7. The Eighth Circuit has held that a failure to investigate can create a due process violation if the defendants displayed "deliberate indifference" to the plaintiff's fundamental right to the degree that it "shocks the conscience." Scheeler, 402 F.3d at 831. But the Eighth Circuit has also stated that "[a]n officer's negligent failure to investigate inconsistencies or other leads is insufficient to establish conscience-shocking misconduct." Akins v. Epperly, 588 F.3d 1178, 1184 (8th Cir. 2009); see also Wilson v. Lawrence Cnty., 260 F.3d 946, 955 (8th Cir. 2001) ("Negligent failure to investigate other leads or suspects does not violate due process."). "Even allegations of gross negligence fail to establish a constitutional violation. Only reckless or intentional failure to investigate other leads offends a defendant's due process rights." Clemmons, 477 F.3d at 966 (cleaned up and quotation omitted).

Here, the officers met with Derek and Seneca separately and simply chose not to take any further action regarding the situation. This is not the "conscious shocking" behavior that violates a constitutional right. Compare Villanueva, 779 F.3d at 512 (finding no conscious shocking behavior where police failed to issue written report and prosecute based on victim's allegations) with Rogers v. City of Little Rock, Ark., 152 F.3d 790, 797 (8th Cir. 1998) (finding conscious shocking behavior from police officer who raped woman coercing her into a sexual act with his position of authority); see also Montgomery v. City of Ames, 749 F.3d 689, 695 (8th Cir. 2014)

13

(finding no reckless or conscious shocking behavior where officer was faced with conflicting accounts of domestic violence accusations and chose not to further investigate).

As the Eighth Circuit has stated, "[h]olding that an officer's failure to arrest for one incident of harassment *causes* a subsequent incident of harassment or violence would essentially take away the officer's discretion to determine when to arrest—a fundamental part of our criminal system." Ricketts, 36 F.3d at 780. And because "[d]iscretion is essential to the criminal justice process, [] officers cannot be expected to make an arrest or initiate a formal investigation in response to every complaint." Villanueva, 779 F.3d at 513 (cleaned up and citation omitted). While failing to investigate serious accusations of domestic violence reflects poorly on the officers of the Miller Police Department, Seneca has failed to allege conduct by the Miller Defendants that shocks the conscience. At most, Seneca has pleaded facts to infer superficiality, lethargy, neglect and disinterest by the Miller Defendants, but insufficient facts to allow an inference that the failure to investigate was intentional or reckless.

The same analysis above applies to the last of the Miller Defendants, the City of Miller. "[I]n a section 1983 action, a municipality may only be held liable for constitutional violations which result from a policy or custom of the municipality." Scheeler, 402 F.3d at 832 (citation omitted). "There must exist a prior pattern of unconstitutional conduct that is so 'persistent and widespread' as to have the effect and force of law." Andrews v. Fowler, 98 F.3d 1069, 1075 (8th Cir. 1996). Even if Seneca were able to point to a specific constitutional violation resulting from the failure to investigate her domestic violence allegations, she cannot point to any pattern, custom or policy within the Miller Police Department causing such violations and therefore she cannot establish a valid § 1983 complaint against the municipality. See Mortensbak, 102 F. Supp. 3d at 1100–01 (granting summary judgment on issue of qualified immunity to municipality where

plaintiff presented no evidence that violation was anything "more than a one-time incident or that it was carried out in accordance with an unconstitutional custom or policy"). Therefore, the Miller Defendants' motion to dismiss the § 1983 claims must be granted.

### B.     42 U.S.C. § 1985

Seneca contends Defendants engaged in a conspiracy in violation of § 1985(3). Docs. 1, 26 at 10. "In order to state a claim for conspiracy under § 1985, a plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." Kelly v. City of Omaha, 813 F.3d 1070, 1077 (8th Cir. 2016) (cleaned up and citation omitted). "This standard requires that allegations of a conspiracy be pleaded with sufficient specificity and factual support to suggest a meeting of the minds directed toward an unconstitutional action." Id. (cleaned up and citation omitted).

While Seneca argues that she only needs to allege enough to "suggest" a conspiracy to overcome a Rule 12(b)(6) motion to dismiss, she has not alleged sufficient facts. See Doc. 26 at 12. Seneca's only allegations about any agreement between Derek and the Miller Defendants are the sequence of communications on the day of the incident and the failure of the Miller Defendants to follow up on her allegations of domestic abuse. As previously discussed, these allegations are too speculative to establish a "meeting of the minds" between Derek and the Miller Defendants. Without material facts supporting such an allegation, Seneca's § 1985 claim is properly dismissed.

Seneca cites to Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970), Doc. 26 at 12, as support that the sequence of communications between two parties can create a suggestion of a conspiracy, but the case is readily distinguishable.[5]  Adickes involved a challenge to the public

---

[5] It is worth noting that Iqbal, 556 U.S. at 662, and Twombly, 550 U.S. at 554, which created a more demanding standard for conspiracy allegations at the pleading stage was decided decades after Adickes.

15

accommodations provisions of the 1964 Civil Rights Act, when an African American plaintiff was refused service at a restaurant and then was arrested afterwards on a charge of vagrancy. One of the defendants admitted in a deposition that he had "ordered the food counter supervisor to see that Miss Adickes was refused service only because he was fearful of a riot in the store by customers angered at seeing a 'mixed group' of whites and blacks eating together." Adickes, 398 U.S. at 154. The Supreme Court identified that the crucial issue in the case was whether a police officer was present in the store because "[i]f a policeman were present, we think it would be open to a jury, in light of the sequence that followed, to infer from the circumstances that the policeman and a Kress employee had a 'meeting of the minds[.]'" Id. at 158. But in Adickes, the policeman in question did not deny the possibility that "upon seeing petitioner with Negroes, he communicated his disapproval to a Kress employee, thereby influencing the decision not to serve petitioner." Id. And there was testimony that the chief of police had previously spoken with the store owner and that the arresting policeman had visited the store everyday creating the inference of a preexisting relationship. Id. at 153 n.8.

Here, there is no allegation that Derek had a preexisting relationship with any members of the Miller Police Department. While it is undisputed that Derek (having taken Seneca's phone) spoke with Henson before Seneca had a chance to lodge her domestic violence complaint, Derek and Henson's communication was in the ordinary course of Henson's position as a police officer and was in conjunction with and directly related to the domestic incident that had occurred earlier that day. Seneca claims that the only reasonable explanation why her constitutional rights were violated is because she is a woman or woman of color. See Doc. 26 at 11 n.10. But this statement is a legal conclusion rather than supported with indicia of invidious discrimination; by contrast in Adickes, the intention of the conspiracy to discriminate—to refuse service to mixed race dining

parties—was obvious and supported with some evidence that the police exhibited racial animosity. Seneca has failed to plead facts that suggest a meeting of the minds between Derek and the Miller Defendants and thus her § 1985 claim fails.

Any conspiracy alleged among the Miller Defendants themselves to deny Seneca her constitutional rights fails because of the intracorporate conspiracy doctrine which precludes conspiracy claims against government institutions. Kelly, 813 F.3d at 1078. "Because a conspiracy by its nature involves multiple parties, this doctrine provides that a local government entity cannot conspire with itself through its agents acting within the scope of their employment." Id. at 1078 (citation omitted). Therefore, Defendants are dismissed from Seneca's § 1985 claim.

### C. Supplemental jurisdiction

Seneca's remaining claims against Derek are based in state, not federal, law, and there is no complete diversity of citizenship here. Therefore, this Court would have to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) which permits a district court to handle state law claims that are a part of the same case or controversy as the claims that fall within the district court's original jurisdiction. However, a federal court generally, under 28 U.S.C. § 1367(c)(3), declines to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction" unless the case is close to or in the midst of trial or other such reasons exist to retain jurisdiction See Zutz v. Nelson, 601 F.3d 842, 850 (8th Cir. 2010) (cleaned up and citation omitted). "The district court is afforded broad discretion in determining whether to exercise supplemental jurisdiction." Crest Constr. II, Inc. v. Doe, 660 F.3d 346, 359 (8th Cir. 2011). "In determining whether to exercise supplemental jurisdiction, courts considers judicial efficiency, convenience, and fairness to litigators." Magee v. Trs. of the Hamline Univ., 957 F. Supp. 2d 1047, 1060 (D. Minn. 2013). "In assessing efficiency, convenience, and fairness, courts

look to a number of factors, including the stage of the litigation; the difficulty of the state claim; the amount of time and energy necessary for the claim's resolution; and the availability of a state forum." Id. (cleaned up and citation omitted). "Courts should exercise judicial restraint and avoid state law issues wherever possible . . . ." Id. The stage of this case is "before any substantial preparation has gone into the dependent claims," which provides a "fair" reason to decline to exercise supplemental jurisdiction. Id. (cleaned up and citation omitted).

Because Seneca has not stated a viable claim within original jurisdiction in federal court, this Court declines to exercise supplemental jurisdiction over Seneca's state law claims. See Mountain Home Flight Serv., Inc. v. Baxter Cnty., 758 F.3d 1038, 1045 (8th Cir. 2014) (district court acted within its discretion declining to exercise supplemental jurisdiction after dismissing § 1983 claims); see also Hansell v. City of Atl. City, 152 F. Supp. 2d 589, 602–03 (D.N.J. 2001), ("[Section] 1983 does not create a cause of action based upon violations of state statutes."). Dismissing these claims at an early stage of litigation will allow Seneca to pursue relief in state court against Derek if she so chooses. See Jennings v. City of Stillwater, 383 F.3d 1199, 1205 (10th Cir. 2004) ("[F]ederal courts are not entrusted with the responsibility of ensuring the effective enforcement of state criminal laws; that role falls to state and local law enforcement authorities.").

## IV. Conclusion

For the reasons discussed above, it is

ORDERED that Derek's motion to dismiss, Doc. 16, is granted without prejudice to Seneca refiling in state court. It is further

ORDERED that Miller Defendants' motion to dismiss, Doc. 24, is granted. It is finally

ORDERED that this Court declines to exercise supplemental jurisdiction over the state law claims.

DATED this 21st day of June, 2022.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE